**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-20395-BLOOM**

CESAR ARMANDO MORALES ANDRADE,

      Petitioner,

v.

MIAMI ICE FIELD OFFICE DIRECTOR, in her
official capacity; SECRETARY OF THE
DEPARTMENT OF HOMELAND SECURITY,
in her official capacity; and U.S. ATTORNEY
GENERAL, in her official capacity,

      Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court upon Petitioner Cesar Armando Morales Andrade's

("Petitioner") Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241. ECF No.

[1]. Petitioner alleges that he has been unlawfully detained in Immigration and Customs

Enforcement ("ICE") custody. *Id.* The Court ordered a response from Respondents the Miami ICE

Field Office Director, the Secretary of the Department of Homeland Security, and the United States

Attorney General (together, "Respondents"). *See* ECF No. [4]. The Respondents timely filed their

Response, ECF No. [6], and Petitioner filed a Reply, ECF No. [10]. The Court has considered the

Petition, the Response, the Reply, the record in the case and is fully advised. For the reasons set

forth below, the Petition is denied.

## I. FACTUAL BACKGROUND[1]

Petitioner is a 36-year-old Honduran national. ECF No. [1] ¶ 15. He suffers from several

---

[1] The Factual Background section is drawn primarily from the Petition, ECF No. [1]. However, where relevant and verified by unchallenged supporting documentation, the Court supplements this fact section with information drawn from the Response. ECF No. [6].

medical conditions, including diabetes, acute stress, anxiety, and depression—with the latter three conditions stemming from "the brutal attacks he and his family have experienced in Honduras from criminal organizations targeting them." *Id.* ¶ 25.

### A. Initial Entry into and Removal from the United States

Petitioner first came to the United States in February 2014. *Id.* ¶ 16; ECF No. [6] at 2. He was encountered by Customs and Border Patrol ("CBP") officers upon arrival and released on an order of recognizance. ECF No. [6] at 2–3. Within a year of his arrival, he applied for asylum, but his application was denied, and in September 2015, he was ordered removed. ECF No. [1] ¶ 17. On October 26, 2025, he appealed his removal order, but that appeal was dismissed on June 20, 2016. *Id.* In August 2016, Petitioner left the United States pursuant to an administratively final order. *Id.* ¶ 18.

### B. Re-Entry and Reinstatement of Removal

From August 2016 to January 2021, Petitioner alleges that he remained in Honduras. *Id.* ¶ 19.[2] In 2021, he re-entered the United States "seeking protection after being targeted, harmed and tortured by International Criminal Organizations called 18th Street Gang, MS-13, Los Pumas, and police in Honduras." *Id.*

On January 24, 2024, Petition was arrested for Battery/Domestic Violence by local law enforcement.[3] ECF No. [6] at 4. ICE was informed and determined that "Petitioner had previously been removed and was subject to removal under Section 241(a)(5)." *Id.* Thus, that same day, the Department of Homeland Security ("DHS") issued a Notice of Intent/Decision to Reinstate the

---

[2] Respondents allege that Petitioner attempted to enter the United States along the United States-Mexico border four times between October 2020 and December 2020 but was removed by CBP each time. ECF No. [6] at 3–4.

[3] Petitioner admits that he has one past arrest for simple battery but alleges that this is his only criminal history. ECF No. [1] ¶ 23.

Removal Order. *Id*. On March 15, 2024, Petitioner was turned over to ICE and detained at Krome North Service Processing Center ("Krome."). *Id.* at 5.[4]

### C. Withholding-Only Proceedings

On April 18, 2024, Petitioner's attorney claimed reasonable fear on Petitioner's behalf, prompting ICE to refer Petitioner to the United States Citizenship and Immigration Services ("USCIS"). *Id.* On May 15, 2024, an asylum officer found that Petitioner had shown a reasonable fear—as was his burden—along with past harm constituting torture. ECF No. [1] ¶ 20. As a result, Petitioner was placed in "withholding-only" proceedings, a type of immigration proceeding "reserved for persons who re-entered the United States seeking refuge after having been previously ordered removed." *Id.* ¶ 21. Since the parties' briefing, an ultimate decision on whether removal would be withheld had not been made in his case. *Id.* ¶ 22.[5]

### D. Custody Reviews

Petitioner alleges that, during his detention, ICE has failed to provide him "with meaningful, timely, individualized custody reviews," as is required of them. *Id.* ¶ 28.

Respondents allege that on July 15, 2024, ICE issued Petitioner a Decision to Continue Detention. ECF No. [6] at 8. On October 7, 2024, ICE conducted a personal interview of Petitioner for purposes of reviewing custody status and decided to continue custody. *Id*. On October 22, 2024, a Decision to Continue Detention was served on Petitioner. *Id*. On December 23, 2025, Petitioner requested to be paroled, a request which ICE denied. *Id*. Petitioner remains at Krome. *Id*. And on

---

[4] Petitioner was briefly transferred to the custody of the United States Marshal Service for criminal prosecution. ECF No. [6] at 5. After he was convicted and sentenced to time served in April 2024, he was returned to ICE Custody. *Id*.

[5] Respondents clarify that multiple hearings in Petitioner's case have been rescheduled by both parties for a variety of reasons. ECF No. [6] at 5–8. Testimony in Petitioner's case concluded on January 22, 2026. *Id.* at 8.

January 26, 2026, ICE notified Petitioner that his next custody review would be on January 29, 2026. *Id.* at 15.

### E. Habeas Petition

On January 21, 2026, Petitioner filed the instant Petition. ECF No. [1]. He alleges violations of his Fifth Amendment due process rights, violations of 8 U.S.C. § 1231(a)(6), violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) ("APA"), and the *Accardi* doctrine. *Id.* at 28–29.  He requests immediate release or, alternatively, a bond hearing. *Id.* at 30. On January 27, 2026, Respondents filed their Response, arguing that Petitioner's continued detention pending his withholding-only proceedings is lawful, Petitioner's claims regarding the conditions of his confinement are not cognizable in habeas proceedings, and ICE has conducted post-removal order custody reviews. ECF No. [6]. Petitioner replies that habeas relief based on due process violations is available to petitioners in withholding-only proceedings to combat long detentions, especially in cases where removal is not reasonably likely to occur in the foreseeable future. ECF No. [10].

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   DISCUSSION

### A. Jurisdiction

Respondents challenge the Court's jurisdiction to adjudicate this case, arguing that 8

4

U.S.C. § 1252(g) strips this Court of jurisdiction to hear Petitioner's habeas claims. ECF No. [6] at 2. The Court disagrees.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has interpreted this provision narrowly, limiting it to only "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). The provision is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9.

Section 1252(g) was not, by contrast, intended to bar review of "the universe of deportation claims." *Id.* at 482. Indeed, the Supreme Court has cautioned against interpreting § 1252(g) to "sweep in any claim that can technically be said to 'arise from'" these three actions. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also AADC*, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("We have previously rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (quotation marks omitted)).

Respondents contend that review of Petitioner's claim is barred because § 1252(g) "plainly bars direct and indirect attacks on the execution of a removal order." ECF No. [6] at 2. But Petitioner does not challenge that ICE can effectuate a valid removal order. Specifically, he does

5

not challenge the Government's decision to *commence* proceedings against him, *adjudicate* the case, or *execute* his removal (notwithstanding his valid pursuit of withholding of removal). Instead, he challenges the *manner* in which ICE is executing the removal order—matters arising from *after* the Government made the decision to remove him. Thus, the Court remains free to hear Petitioner's challenges to the post-removal detention procedures, the length of his detention, and Respondents' adherence to their own internal procedures.

### B.  Petitioner's Violation of § 1231(a)(6) Challenge

When a noncitizen is subject to a final removal order, the Immigration and Nationality Act ("INA") starts a 90-day clock. 8 U.S.C. § 1231(a). During that 90-day period, the Government "shall" (i.e., must) keep the noncitizen detained. *Id.* § 1231(a)(2). If that initial period lapses without a successful removal, the Government has two options: it may release the individual with conditions of supervision or keep them detained. *Id.* § 1231(a)(6). Read by its literal terms, § 1231 "places no outer limit on that continued confinement." *Tran v. Warden, Florida Soft Side South Detention Center et al.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *3 (M.D. Fla. Mar. 10, 2026).

But, of course, holding someone indefinitely is constitutionally impermissible. So, the Supreme Court read § 1231(a)(6) as containing a practical limitation rooted in the Fifth Amendment Due Process Clause. *Zadvydas*, 533 U.S. 678. The Government, the Supreme Court held, may only detain a noncitizen for a period "reasonably necessary" to actually bring about their removal. *Id.* at 701. To give lower courts guidance, the Court drew a line at six months—any post-removal detention lasting six months or less is "presumptively reasonable." *Id*. "In order to state a claim under *Zadvydas*," then, "the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050,

1052 (11th Cir. 2002). If the noncitizen does so, the burden then shifts to the Government to rebut that showing. *Zadvydas*, 533 U.S. at 701. "[A]s the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention therefore becomes increasingly demanding over time.

Thus, the Court's first task is to determine whether Petitioner's detention has exceeded the six-month period that *Zadvydas* recognized as presumptively reasonable. Petitioner represents, and Respondents do not dispute, that he has been at detained at Krome since mid-March 2024. ECF No. [1] ¶ 30; ECF No. [6] at 5. As of the date of this Order, Petitioner has been detained for approximately 25 months. That is far beyond the six-month timeframe that the Supreme Court described as presumptively reasonable.

The Court's next step is to ask whether Petitioner has shown that his removal is not "reasonably foreseeable" and, if so, whether Respondents have adequately rebutted that showing. Petitioner argues that his "continued detention violates § 1231(a)(6) as interpreted by *Zadvydas* because it has far exceeded six months, and his removal is not reasonably foreseeable." ECF No. [1] ¶ 53. Specifically, Petitioner argues that he has shown a fear of return to Honduras, leading an asylum officer to find that he will be subjected to torture if removed to Honduras. *Id.* ¶ 78. Once an immigration judge makes a decision on his withholding-only proceedings, DHS or Petitioner will have the right to appeal. If Petitioner prevails, the Government will then attempt to find a third country to accept Petitioner, "even if those attempts are extremely unlikely to succeed." *Id*. All of this will take substantial time, making Petitioner's removal unlikely in the foreseeable future. *Id*.; *see also id.* ¶¶ 84–85.

Respondents argue that the Government "may detain aliens pending withholding-only

proceedings as it is reasonably foreseeable that a termination point (*i.e.*, removal) will occur after the conclusion of the withholding-only proceedings." ECF No. [6] at 2. They argue that Petitioner must provide "actual proof or evidence" that removal is not reasonably foreseeable—not mere conclusory allegations. *Id.* at 10. Respondents point out that courts have rejected Petitioner's exact claim that removal is not reasonably foreseeable "because he intends to pursue an appeal if his application for withholding of removal is denied by the immigration court." *Id.* (citations omitted). And if that argument does not prevail, Petitioner has shown no other reason why removal will not happen in the reasonably foreseeable future; all he has shown is a delay due to his own withholding-only proceeding. *Id.* at 11.

Petitioner replies that "pursuit of legal relief from removal does not toll the removal period, nor should it otherwise prejudice the habeas petitioner." ECF No. [10] at 5 (citation omitted). To find that pursuing one's legal rights "renders the corresponding increase in time in detention reasonable" would, in effect, punish habeas petitioners who exercise their legal rights. *Id.* (citations omitted). Petitioner points to cases that have concluded accordingly—that is, that pursuit of habeas rights cannot be a basis for extending the period of detention. *Id.* at 5–6 (citations omitted). Fundamentally, Petitioner argues that his removal in the reasonably foreseeable future is unlikely "due to: (1) the protracted and indefinite duration of his withholding-only proceedings, and (2) the potential for an outcome in which Petitioner cannot be removed." *Id.* at 6.

Courts within the Eleventh Circuit "have consistently held that, when a habeas petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future[.]" *Lambert v. Garland*, 2023 WL 2016841, at *3 (S.D. Fla. Feb. 15, 2023) (quoting *Vaz v. Skinner,* 634 F. App'x 778, 782 (11th Cir. 2015)); *see also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("[N]on-

cooperation is the only barrier to his removal."); *Linares v. DHS*, 598 F. App'x 885, 887 (11th Cir. 2015) ("[T]he government has attempted to repatriate him five times . . . and he admits that his obstructive actions, failure to cooperate, and frequent litigation are the only reasons he remains in the United States."); *Vaz*, 634 F. App'x at 782 ("Brazil has not refused to accept Petitioner. In fact, the Consulate has indicated that it cannot issue Petitioner a travel document unless he voluntarily signs for it." (citations omitted)); *Castaneda v. Perry*, 95 F.4th 750, 758 n.7 (4th Cir. 2024) (finding that the petitioner "has not shown that the delay in his withholding-only proceedings is directly attributable to anything other than ordinary litigation processes" (quotation marks omitted)); *Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) ("Gozo interrupted the running of time under *Zadvydas* when he simultaneously challenged issues related to his removal order and his post-removal period detention." (cleaned up)). In such cases, courts find that the habeas petitioner's detention is not "potentially permanent" or "indefinite" but will instead terminate after the conclusion of the petitioner's withholding proceedings. *Rodriguez v. Meade*, No. 20-CV-24382, 2021 WL 671333, at *5 (S.D. Fla. Feb. 22, 2021) (citing *Davis v. Rhoden*, No. 19-20082-CV, 2019 WL 2290654, at *8 (S.D. Fla. Feb. 26, 2019), *report and recommendation adopte*d, No. 19-20082-CIV, 2019 WL 2289624 (S.D. Fla. May 29, 2019)).

Some courts have found to the contrary—namely, that delays in removal due to a petitioner pursuing post-removal order relief can render any removal unforeseeable. *See, e.g.*, *Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 12 (D. Mass. 2024) (finding removal unlikely where removal hinged "on the outcome of several lengthy remand and appeal proceedings"); *Garcia Diaz v. Acuff*, 507 F. Supp. 3d 991, 996 (S.D. Ill. 2020) ("Because [Petitioner] cannot be removed during the

pendency of his withholding case, there is no significant likelihood that he will be removed in the reasonably foreseeable future." (citing *Zadvydas*, 533 U.S. at 699, 701)); *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004) ("Prolonged incarceration for an alien whose potentially meritorious challenge to removal is part of a congested docket is indistinguishable from lengthy incarceration because the alien's native country refuses to issue travel documents."); *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take."); *Adu v. Bickham*, No. 7:18-CV-103-WLS-MSH, 2018 WL 6495068, at *3 (M.D. Ga. Dec. 10, 2018) (finding removal not reasonably foreseeable where the petitioner's administrative case would go on for some time and the petitioner intended to "exhaust all available avenues of appeal"). Those cases understand a petitioner to have "caused" the delay in his own removal "only in the sense that he has exercised his lawful right to seek withholding from removal and review of the immigration judge's adverse decision." *Garcia Diaz*, 507 F. Supp. 3d at 997. That "causation" is not enough to overcome the simple fact that removal is unforeseeable.

But the Court sees no reason to depart from the logic it has applied in the majority of cases in this Circuit. Indeed, the Fourth Circuit in *Castaneda v. Perry* articulated it well:

> [W]hile [Petitioner]'s withholding-only proceedings have perhaps gone on longer than some, those proceedings are nonetheless progressing in their ordinary course and will eventually come to a close. The absence of a date certain—imminent or not—for the conclusion of those proceedings is of no moment. What matters, the Supreme Court teaches, is that [Petitioner]'s detention "has 'a definite termination point': the conclusion of [the withholding-only] proceedings."

*Castaneda*, 95 F.4th at 758 (quoting *Jennings*, 583 U.S. at 304). Other circuits have found similarly. *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (affirming denial of

habeas relief where petitioner's continued detention was "directly associated with a judicial review process that has a definite and evidently impending termination point" and thus was "clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*"); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) ("It is true that [petitioner's] detention lacks a certain end date, but this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in *Zadvydas*."); *G.P. v. Garland*, 103 F.4th 898, 902 (1st Cir. 2024) ("In concluding that [the petitioner] is not entitled to habeas relief, we align ourselves with all of the circuit courts that have considered analogous circumstances." (citing *Castaneda*, 95 F.4th 750)).

Moreover, the Eleventh Circuit has indicated that it adopts similar reasoning. In *Gozo v. Napolitano*, the Eleventh Circuit indicated that where a petitioner filed for withholding of removal, the removal period was tolled until the immigration judge denied his request for relief. 309 F. App'x at 346. The Court explained that the petitioner "interrupted the running time under *Zadvydas*" by doing so. *Id.* (quoting *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002)). Applying the Eleventh Circuit's logic, only approximately two months passed between the start of Petitioner's ICE custody and his being placed in withholding-only proceedings, making his petition premature. *See* ECF No. [6] at 5. Thus, the Court finds habeas relief is not warranted under § 1231(a)(6) and *Zadvydas*.

### C. Petitioner's Due Process Challenge

Petitioner raises a due process challenge that he intends to have operate independent of his *Zadvydas* challenge. He points to *Johnson v. Arteaga-Martinez*, which he contends left available as-applied challenges to protracted detention under § 1231(a)(6). ECF No. [1] ¶ 48 (citing 142 S. Ct. 1827, 1835 (2022)). He points to several courts that, since *Johnson v. Arteaga-Martinez*, have ruled favorably on as-applied challenges to detention under § 1231(a)(6). *Id.* ¶ 49 (collecting

cases). Petitioner suggests that, to analyze his as-applied challenge, the Court should apply the balancing test articulated in *Sopo v. U.S. Attorney General*, which assesses "(1) the duration of detention, (2) the reason for delay, (3) the feasibility of removal, 4) the comparison between the length of immigration detention and criminal custody, and 5) 'whether the facility or the civil immigration detention is meaningfully different from a penal institution or criminal detention.'" *Id.* ¶ 50 (citing 825 F.3d 1199, 1212 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)). He argues *Sopo*'s analysis continues to serve as persuasive authority for as-applied challenges to "unreasonable and unjustified" detention. *Id.* (citation omitted). And each of these factors, Petitioner says, shows his detention to be unreasonable. *Id.* ¶¶ 66–70.

Petitioner also raises a procedural due process challenge. *Id.* ¶ 59. He argues that, under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), he has shown the lack of a bond hearing in his 22-month confinement to be a due process violation. *Id*. He argues, first, that the private interest at play—Petitioner's liberty interest—is "undoubtedly substantial." *Id.* ¶ 60. Second, he contends that the risk of erroneous deprivation is high where Petitioner receives no bond hearing, as that is "the only procedural safeguard designed to test the necessity of continued confinement." *Id.* ¶ 61. Finally, Petitioner argues the Government's interests are "adequately protected by the individualized bond determination procedure already contemplated by §1226(a)." *Id.* ¶ 62. Therefore, Petitioner argues he is entitled to a bond hearing before a neutral arbiter at which the Government bears the burden of proof by clear and convincing evidence to justify continued detention. *Id.* ¶¶ 75–76.

Respondents argue that *Arteaga-Martinez* does not provide an as-applied due process challenge to detention under § 1231 that is "distinct from the *Zadvydas* framework." ECF No. [6] at 12. *Zadvydas* represents the "sole recourse" for petitioners challenging their continued detention

on due process grounds. *Id.* (citing *Castaneda*, 95 F.4th at 760).

Petitioner replies that several cases—including those cited by Respondents—support the notion that "an alternate due process analysis is available under exceptional circumstances in which a bond hearing would be proper." ECF No. [10] at 1. That is why Petitioner "in the alternative" raised his request for a bond hearing under the traditional balancing test framework. *Id.* at 2.

The Court declines Petitioner's invitation to apply any framework other than *Zadvydas*. For context, in *Arteaga-Martinez*, the petitioner, a Mexican citizen, had been removed from the United States and subsequently reentered. 596 U.S. at 576. After being detained by ICE, the petitioner applied for withholding of removal under § 1231(b)(3) and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. *Id.* at 576–77. The Supreme Court considered whether § 1231(a)(6) required a bond hearing and determined that § 1231(a)(6) does not require a bond hearing before an immigration judge after the six-month mark. *Id.* at 580. The Court decided this on statutory grounds and left the due process claims "for the lower courts to consider in the first instance." 596 U.S. at 583.

Since *Arteaga-Martinez*, courts have taken a variety of approaches to the constitutionality of continued detention under § 1231(a)(6). Some have, as Petitioner invites, used the balancing test from *Mathews*. *See, e.g.*, *Cabrera Galdamez v. Mayorkas*, No. 22 Civ. 9847 (LGS), 2023 WL 1777310, at *4 (S.D.N.Y. Feb. 6, 2023) (finding that it is appropriate to apply the *Mathews* test to due process challenges to detention under § 1231(a)(6) because these challenges raise "largely parallel" due process concerns as those to challenges under § 1226(a), another statute concerning immigration detention as a matter of discretion, and courts have applied *Mathews* to § 1226(a) due process challenges). Others have found that *Zadvydas* is the only mechanism for due process relief

from § 1231(a)(6) detention. *See, e.g., Hernandez-Esquivel*, 2018 WL 3097029, at *8 (stating that *Zadvydas* "addressed the extent to which due process demands relief in the § 1231(a) setting"); *M.P. v. Joyce*, No. 1:22-cv-06123, 2023 WL 5521155, at *5 (W.D. La. Aug. 10, 2023), *report and recommendation adopted*, 2023 WL 5517263 (W.D. La. Aug. 25, 2023) (concluding that petitioner was not entitled to a bond hearing because his detention was neither "indefinite" nor "potentially permanent," and alternatively, if *Mathews* applied, that the government's interest outweighed petitioner's). Others have applied their circuits' equivalents of the *Sopo* factors. *See, e.g., Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *6 (D. Colo. May 5, 2025) (applying the six-factor test from *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019)); *Michelin v. Oddo*, No. 3:23-cv-22, 2023 WL 5044929, at *6-7 (W.D. Pa. Aug. 8, 2023) (using the four-factor balancing test articulated in *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020)).

The Fourth Circuit, for its part, was unequivocal: "a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda*, 95 F.4th at 760 (4th Cir. 2024) (citing *Zadvydas*, 533 U.S. 678). *Zadvydas*, the Fourth Circuit said, "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds. In other words, the *Zadvydas* standard *is* due process." *Id.* (citing same). The Sixth Circuit, in a decision before *Arteaga-Martinez*, held much the same, stating that it saw "no cause to question" the *Zadvydas* decision by applying a different framework to a constitutional challenge to detention under § 1231(a). *Martinez v. Larose*, 968 F.3d 555, 565–66 (6th Cir. 2020). Given the weight of circuit authority on the matter, the Court is inclined to reject Petitioner's non-*Zadvydas* due process claim outright.

Even assuming that as-applied due process challenges to § 1231 detentions may proceed

outside the *Zadvydas* framework, Petitioner has failed to show "exceptional" circumstances that would warrant such a departure. 596 U.S. at 583. Petitioner makes very little argument as to why his case is exceptional, merely noting that he "has been detained for twenty-two months without bond and no meaningful opportunity to be heard." ECF No. [1] at 16. The reasoning in *Castaneda* is instructive:

> At bottom, [Petitioner]'s argument that his case is "exceptional" hinges on the length of his detention. But focusing on the length of his detention to the exclusion of all else paints an incomplete picture. The only reason [Petitioner] finds himself in continued detention is because he voluntarily initiated withholding-only proceedings, blocking his prompt removal from the United States. Those proceedings are still pending. And even accepting they've gone on longer than some, the proceedings have progressed—and continue to progress—in their normal course. Critically, there has been no showing that the Government, through bad-faith or careless dilatory conduct, has delayed the resolution of those proceedings.

95 F.4th at 761.

That same reasoning applies here. It appears that *both* the Government and Petitioner have requested extensions or caused procedural delays in the underlying withholding-only proceedings, all apparently for valid reasons. *See* ECF No. [6] at 5–8. There is nothing indicating "that any delay is attributable to [anything other than] ordinary litigation processes." *Castaneda*, 95 F.4th at 761 (quotation marks omitted). And length of detention, "standing alone, simply does not render his case 'exceptional.'" *Id*.

Moreover, the record suggests that Petitioner has received sufficient process since being detained, further weakening his arguments of exceptionality. He had the opportunity to present his "reasonable fear" arguments to USCIS, who found his burden satisfied. ECF No. [6] at 5. He had applications adjudicated regarding venue and recusal of the initial immigration judge. *Id.* at 5–7. He had testimony taken regarding his case from multiple witnesses on multiple occasions, including cross-examination and presentation of evidence. *Id.* at 7–8. And he had the opportunity

to present written closing arguments regarding his application for relief from removal. *Id.* at 8. Beyond this, Petitioner has received numerous custody reviews. *Id.* In addition, those habeas proceedings represent another point of due process. As the Supreme Court has noted, "habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office." *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977).

Overall, the Court finds that Petitioner has not shown exceptional circumstances justifying a departure from the *Zadvydas* framework. Therefore, his as-applied due process challenge to his § 1231(a)(6) detention must fail, and the Court need not pursue a weighing of the *Sopo* or *Mathews* factors.

### D.  Petitioner's APA and *Accardi* Doctrine Claims

Finally, Petitioner alleges that under the doctrine set forth in *Accardi v. Shaughnessy*, ICE is required to abide by its own regulations and polices insofar as those regulations and policies "affect the fundamental rights of individuals." ECF No. [1] ¶¶ 79 (citing 347 U.S. 260, 266 (1954)). Here, Petitioner contends that ICE failed to "meaningfully" review Petitioner's detention and failed to have the Field Office Director approve his continued detention. *Id.* ¶ 89.

Respondents respond that Petitioner received his first Decision to Continue Detention on July 15, 2024. ECF No. [6] at 8. On October 7, 2024, he was interviewed by ICE for purposes of reviewing his custody, after which ICE decided to continue custody. *Id.* One December 23, 2025, Petitioner requested to be paroled, and ICE denied the request. *Id.* On January 26, 2026, ICE notified Petitioner that his next custody review would be on January 29, 2026. *Id.* at 15. That notice informed Petitioner "of his right to submit and documentation he wishes to be considered in support of his release and that an attorney or another person may submit material on his behalf." *Id.* Petitioner refused to sign the notice. *Id.* Thus, Respondents argue, "ICE has fully complied

16

with all the applicable regulations and appropriately found that Petitioner's continued detention is warranted. Plaintiff provides no support for his assertion that the reviews were not meaningful or otherwise not in compliance with ICE's regulations." *Id*.

The Court finds Petitioner's claims are without merit. Custody review procedures for aliens held under § 1231(a)(6) are governed by 8 C.F.R. § 241.4. Pursuant to § 241.4, ICE was required to review Petitioner's detention after 90 days of detention, 180 days of detention, and 540 days of detention. *Id*. §§ 241.4(k)(2)(ii)–(iii). Each time, it was required to serve its decision on Petitioner. *Id*. §§ 241.4(h)(4) and 241.4(k)(2)(iii). And at least once before the 180-day mark, it was required to personally interview Petitioner. *Id*. § 241.4(i)(3).

Within this regulatory framework, it appears that ICE has adequately followed its own policies and procedures. It provided the 90-day, 180-day, and 540-day reviews required by the regulations, provided an interview prior to the 180-day mark, and served its decisions on Petitioner. Thus, the Court finds the *Accardi* principle inapplicable as ICE followed its own policies and procedures.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Petition for Writ of Habeas Corpus, **ECF No. [1]**, is **DENIED**.

2. The Clerk of Court is directed to **CLOSE** this case.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

Case No. 26-cv-20395-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 6, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov

Noting 2241/Bivens US Attorney
Email: usafls-2255@usdoj.gov

18